MINNIE DAVIS, APPELLEE, v. ELLA MURPHY ET AL., AP-
PELLANTS.

FILED MARCH 25, 1921. No. 21285.

1. Specific Performance: PAROL CONTRACT. A parol contract is en-
forceable in a court of equity when one party has wholly per-
formed his part and the other has not performed his part, when it
clearly appears that nonfulfilment would work a fraud upon the
party who has fully performed.

2. ———. "Specific performance is a matter of discretion in a court,
which withholds or grants relief according to the circumstances
of each particular case, where the general rules and principles
governing the court do not furnish any exact measure of justice
between the parties." *Kofka v. Rosicky*, 41 Neb. 328.

3. Evidence: DECLARATIONS AGAINST INTEREST. "It is fundamental that
declarations against interest cannot ordinarily be annulled or ex-
plained away by counter declarations." *Evans v. Kelly*, 104 Neb.
712.

4. Specific Performance: EVIDENCE. The evidence examined, and *held*
that the making of the oral contract in suit, and the fulfilment
by plaintiff of the part to be performed by her, is clearly estab-
lished by the evidence.

APPEAL from the district court for Otoe county: JAMES
T. BEGLEY, JUDGE. *Affirmed.*

*Pitzer, Cline & Tyler* and *George H. Heinke,* for appel-
lants.

*W. F. Moran, contra.*

DEAN, J.

Mrs. Minnie Davis brought an action against the estate
of her deceased mother, Mrs. Ellen Roddy, to compel the
specific performance of an oral contract for the convey-
ance of a forty-acre tract of land, said to have been entered
into by Mrs. Roddy and her daughter in July, 1910. Plain-
tiff alleged that her mother proposed to her that, if she
would provide her with such necessaries of life as she re-
quired, until her death, she would convey to her the land,

as compensation for such necessaries, and for necessaries that plaintiff had theretofore furnished. Plaintiff alleged performance on her part and pleaded failure of performance on the part of decedent. Defendants denied plaintiff's allegations generally, and pleaded that, even if there was such a contract, it was void under the statute of frauds. The court found generally in favor of plaintiff, and awarded specific performance. Defendants appealed.

Mrs. Roddy died intestate in April, 1917, without having conveyed the land to her daughter pursuant to the alleged agreement. Five children survived her, as her only heirs at law, namely, Minnie Davis, the plaintiff, and Ella Murphy, Edward Roddy, Frank Roddy, and Catherine Wall, the defendants. Mrs. Roddy was a widow when she died, her husband having died in 1878. Plaintiff is 55, and is the eldest of the children. She too is a widow, her husband having died in 1894.

Mr. Yowell is a railroad employee, and was a near neighbor of Mrs. Roddy for the last 25 years of her life. He testified that 10 or 12 years before she died Mrs. Roddy told him "that she had made a contract with her daughter Minnie, who was to have the farm if she would take care of her in her lifetime." On the cross-examination he testified that she first told him about her contract with Minnie about 20 years ago. He said that subsequently "she told me, I expect, 50 times," and that she spoke to him about her contract with Minnie "two or three times every year." Mr. Graham is a miller, and was a near neighbor and acquaintance of Mrs. Roddy for over 40 years. He testified that on one occasion she handed one of the farm leases to him and, upon her request, he read it to her. He said that she at once expressed surprise that it did not provide that the rent should be paid to Minnie. She told Mr. Graham that she had directed Patrick Roddy, who wrote the lease, to insert such a provision, to the end that it would be so paid if she should die. Mr. Roddy, however, on the part of defendants, denied that he was so directed by Mrs. Roddy. Mr. Daugherty is a section fore-

Davis v. Murphy.

man. He testified that Mrs. Roddy's house was "almost on the right of way," and that he and his men frequently ate dinner "under the shade of the trees in her yard;" that he once asked her "why she didn't sell her farm and move to town;" that in reply she said she preferred to live where she was, and that "when she was gone why Minnie could do as she pleased with the place." Schuyler Tipton is a rural route mail carrier. His route for about 19 years included the territory where Mrs. Roddy lived. He testified that for practically all of that time he delivered parcel post packages for or to Mrs. Roddy; that they came "once a week, sometimes two a week, and sometimes they wouldn't come for 2 weeks," that they varied in size and weight from 4 to almost 50 pounds; that the packages were nearly all marked as coming from Minnie Davis at Lincoln, where she lived. It was shown that the postal packages contained groceries, meats, clothing, and the like. A granddaughter testified that Mrs. Roddy frequently told her that "Minnie was all she had to depend on for what she needed," and that in sickness she always called on Minnie.

That Mrs. Roddy's supply of clothing and provisions and house furnishings, for almost 20 years before she died, came from Mrs. Davis, and that she took care of her mother in her feebleness and in her helpless age is clearly established by the evidence of six or seven disinterested witnesses. The testimony of the defendants themselves, all of whom had left their mother, and with one exception were residents in other states for more than 20 years, shows that their contribution to the living and to the comfort of Mrs. Roddy was negligible.

For the last year before Mrs. Roddy's death the 40 acres in question rented for $120 cash rent. For the preceding three years the rental was $105 a year. It was not shown that the rental ever exceeded that sum. This income, together with the proceeds from the sale of a few eggs and some poultry, was Mrs. Roddy's sole dependence for her livelihood. The record is clear that but for the contributions of plaintiff she would have been in extreme want.

An attempt was made by defendants to show that Ethel Davis, plaintiff's only child, now married, was kept in the high school by her grandmother until graduation, but the record does not support their contention. Ethel was at her grandmother's place, as shown by the weight of the evidence, less than six months, and was graduated from the Lincoln high school and afterwards attended the university at the sole expense of her mother. On defendant's part a witness testified that Mrs. Roddy in her last illness made statements that were inconsistent with the terms of her alleged contract with plaintiff, and in effect that she wanted her children to share her property equally. It is elementary that declarations against interest are ordinarily conclusive as against the party making them and they cannot be annulled or explained away by counter declarations. *Evans v. Kelly,* 104 Neb. 712. The rule seems to be applicable to the facts before us.

The law in this state is that nothing contained in the statute of frauds "shall be construed to abridge the powers of the court of equity to compel the specific performance of agreements in cases of part performance." Rev. St. 1913, section 2626. Under the act a parol contract is enforceable in a court of equity when one party has wholly performed his part and the other has not performed his part, when it clearly appears that nonfulfilment would work a fraud upon the party who has fully performed. This feature of the act has often been construed by this court and has been so fully discussed that further elaboration does not seem to be necessary. *Kofka v. Rosicky,* 41 Neb. 328, 25 L. R. A. 207, 43 Am. St. Rep. 685; *Moline v. Carlson,* 92 Neb. 419; *Parks v. Burney,* 103 Neb. 572. If there is complaint against the law, application should be made to the legislature for its amendment.

We have examined the case *de novo* and conclude that the judgment must be affirmed. The court's findings are supported by the testimony of six or more witnesses, all disinterested. The weight of the evidence is on the side of plaintiff. That the old lady was able to support her-

self from the proceeds of a forty-acre tract of land, partly overgrown with brush, and that rented for $125 a year, and less for a series of years, is beyond belief. That Mrs. Roddy was practically abandoned by all of her children, except her daughter Minnie, for more than 20 years, sufficiently appears. The record clearly supports plaintiff's allegations respecting the making of the contract and her support of her mother in pursuance of its terms. To deny to her now its fulfilment would be a miscarriage of justice.

The record discloses that the land in question was sold, under the court's direction, for $6,100. The court ordered that, after the statutory charges against the estate, and the costs of administration and the like were paid, the remainder should be paid over to plaintiff. The court did not err in the premises.

The judgment is

AFFIRMED.