FRANK DENESIA, APPELLANT, V. CHARLES DENESIA, ADMINISTRATOR, ET AL., APPELLEES.

FILED APRIL 13, 1928. NO. 25793.

A. R. *Oleson*, for appellant.

P. M. *Moodie* and A. R. *Davis*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and HOWELL, JJ., and BROADY, District Judge.

BROADY, District Judge.

This is an action, in equity, for specific performance of an alleged oral agreement between Noah Denesia, and his son, Frank, by the terms of which the father promised the home farm should go to the son after the death of the parents, in consideration of the son remaining at home, running the farm, looking after and caring for his parents as long as they should live. The son, the plaintiff in this action, remained with the parents from that time, 1893, continuously, and now occupies the place. In 1905 the parents moved to the town of West Point where they lived until 1915. They then lived with a married daughter at Cedar Bluffs for one year, and then went back to the home farm and lived one year with plaintiff and his wife. It seems plaintiff married during the period the old folks lived in West Point. Later the parents made their home

at an old folks' home. The mother died in 1920 and in 1922 the father went to live with a daughter at Cedar Bluffs, where he died in 1923. This action is brought by the son, plaintiff, against the administrator of the father's estate, and his brothers and sisters, as heirs of the parents. The defendants denied the agreement and alleged the premises was the homestead of the parents and, if made, the agreement was void, because not in writing and not signed by both the father and mother, as is required by the homestead statutes; and, further, that there was no sufficient compliance of the conditions of the agreement, if any.

The trial court found, as a question of fact, that such an agreement was made, as alleged by plaintiff; that the premises involved was, at the time, the homestead of the promisor, but not being in writing and signed and acknowledged by both himself and his wife was void. The court also found that the son, the plaintiff, occupied the premises, after the removal of the parents, for some ten years, as a tenant, and that he should be accountable for rent; also that he had put valuable improvements on the land, for which he should receive credit; set off one against the other, and entered a general decree for the partition of the land among the respective heirs, including the plaintiff, in accord with the cross-petition of defendants.

Plaintiff appeals from the decree of the trial court. The questions presented by the appeal are: (1) Is such an oral agreement enforceable as against a homestead? (2) If made, may it be ratified by the promisor, by oral affirmance, after a surrender of the homestead character by removal from the premises? (3) If made, and at least partially performed, was the agreement abandoned by removal by the parents and their receipt of cash payments from the son as "rent"?

The evidence conflicts somewhat on each of the main controverted questions. The plaintiff is supported directly to the original agreement by one sister, Mrs. Stone, who was living at home at the time, and says she heard the father make the alleged promise to the plaintiff, and she

also says that her mother was present at the time and consented and affirmatively assented to the arrangements. A granddaughter, which we assume was Mrs. Stone's daughter, and now grown, says she lived much of her life at the grandparents, and that she had always heard the farm spoken of as "Frank's" (plaintiff), and that she "grew up in that knowledge." Several residents of West Point testified that, after the father had removed to town, he often talked to them of having promised the farm to the plaintiff and spoke of plaintiff with great affection. The adverse defendants testified they never heard of any such arrangement until this suit was started. There is no evidence whatever of any ill feeling of the old gentleman toward the plaintiff. We think the trial court rightly found the agreement had, in fact, been made. We also feel and find the plaintiff sufficiently complied with the conditions of his promise.

Defendants insist that the agreement was bad as no consideration passed from the son in that he was not placed in a worse financial position on account of the promise. That, of course, if true, is a good objection. It is only another way of expressing the fundamental rule and definition of a consideration as a benefit to the promisor or a detriment to the promisee. In this case the detriment to the promisee would be his obligation to keep and support the parents so long as they might live. *In re Estate of Griswold,* 113 Neb. 256.

One of the defendants, Mrs. Stone, a sister of plaintiff, did not contest plaintiff's claim but, in fact, by her answer and also her testimony, affirmatively acknowledged plaintiff's claim and right to the premises and testified that plaintiff had fully performed all of his obligations to his parents. The adverse defendants argue that the plaintiff gave the old people only butter, eggs, ham, bacon, and fresh meat when he butchered, and paid the father $300 in cash a year after the parents removed to town, and assert that the relation of landlord and tenant existed, as shown by the father keeping books and entering the

payments as "rent." These adverse defendants argue that plaintiff therefore abandoned the contract. The record also shows that for a long period a reasonable rental for the farm was far in excess of $300 a year. This would indicate the old gentleman took only what he needed, not as rent, but as "keep," and supports the contention of plaintiff.

Waiver or surrender or abandonment of the homestead is suggested; but we prefer to first discuss the direct question at hand.

It is clear the premises was the homestead at the time the agreement was made. If the agreement was void when it was made, of course, was completely dead. It could not be ratified at a later date and then spring to life. If the statute of frauds or the homestead statute smothered it in the beginning, because not in writing and signed and acknowledged by both husband and wife, the promise remained dead notwithstanding its subsequent affirmation by them. The defendants insist upon the demise, as above suggested, and cite *Teske v. Dittberner*, 70 Neb. 544, as conclusive on that question. That case was three times before this court. Twice by opinion of the court commission and once, the last, by the court, on a second rehearing, and is reported in 63 Neb. 607; 65 Neb. 167, and 70 Neb. 544. In that case the plaintiff orally agreed with his father and mother that he would remain on the home farm, provide the necessities of life to them, and at their death the farm would be his. The agreement continued some years when the mother died. A few years later the father left the farm and went to live with a daughter, when the father conveyed the farm to this daughter, and the son brought an action to quiet title in himself and cancel the deed to the sister, alleging the oral contract and performance on his part. The action was defended on the ground that the premises was, at the time, the homestead, and therefore the agreement was void, it not being in writing and signed and acknowledged by both husband and wife. The trial court found in favor of the son. The

supreme court commission reversed the trial court and held the agreement was void, as violating the homestead statute. A rehearing was granted (65 Neb. 167) and by a more exhaustive opinion, by Judge Ames, set aside the first decision, and held the agreement was not void, but that its enforcement could not be decreed during the lifetime of the then surviving father, directed the sister to hold title in trust for the benefit of the promisee to become complete upon the death of the father, and ordered the son to put up a bond to secure the support of the father until his death. A second rehearing was granted, and this was heard by the court (70 Neb. 544). In a long, exhaustive and complete opinion by Judge Holcomb, the court held the agreement void as against the homestead, quashed everything in the previous decisions, and directed that part of the farm not occupied as a. homestead, *i. e.*, all except the house and grounds adjacent to the value of $2,000, be conveyed to the son. The house, buildings and so much of the lands to the value of $2,000 was exempt from the decree.

If the last decision was the final word on the subject, the instant inquiry would end here. But in 1912 the court decided *Moline v. Carlson*, 92 Neb. 419, Judge Fawcett writing the opinion. And it is there held that such an oral agreement is enforceable, even though the premises involved, at the time, constituted the homestead of the promisor. The decision is based on the oft-repeated theory that the promisor having promised to devise the premises by will and not having done so, the court will do it for him. It further argues that, notwithstanding the homestead character rights, no one could object to the owner directing the disposal of real estate by will, properly executed, and that therefore the homestead statute does not apply. It also states that the original promise was to devise all of the lands of the promisor, which might or might not be the homestead, at the death of the promisor. Of course, that was merely a detour to avoid the *Teske* decision.

These two decisions, both of which establish a distinct property right, are directly opposed to each other. The *Teske* case clearly holds the homestead character of the premises renders the agreement void; the *Moline* decision holds it does not. Now here we are confronted with another case involving the identical question. We cannot follow either of the above decisions without violating the precedent of the other. Waiver, surrender or abandonment of the homestead was suggested in the *Moline* case, as was also suggested at the oral argument of counsel in the case at bar. To reach out for that distinction would only add to the confusion. This court should now finally and definitely adopt either the *Teske* case or the *Moline* case and expressly overrule the other. There are other decisions of this state which are cited by counsel, but it seems to the writer to further distinguish would only add more confusion. There is a clear division of holdings in strong legal jurisdiction on this question. This court is firmly committed to the rule that such oral agreements, otherwise unobjectionable, are enforceable *(Davis v. Murphy,* 105 Neb. 839; *Warnick v. Warnick,* 107 Neb. 747; *Moline v. Carlson,* 92 Neb. 419), but is in confusion whether they are or are not void as against the homestead. If such oral agreements are to be recognized at all, it must follow that they must also be enforced as against the homestead; therefore, we should follow the *Moline* case and expressly overrule the adverse holding in the *Teske* case. The statute of frauds, the statute on wills, and the homestead statute all require contracts affecting the respective subjects to be in writing. But this jurisdiction, and most others, hold, under general similar statutes, oral agreements to devise real estate are not void because of such statutes. If good as against any one of the above statutes, they certainly ought to be binding as against the others. There is no reason why they should not be. And there is this added reason why the homestead character of the premises should not exempt that particular class of cases. A very large proportion, if not a majority, of

such agreements are in cases where the promisors are the father and mother of the promisee. They are usually old folks first beginning to fear the coming years of loneliness and old age, and assure one of the children that, in consideration of his or her staying on the home place with them, and looking after them while they recede down hill, the place shall be his or hers when the old folks are gone. Often the other brothers and sisters, at that time, are enthusiastic for that understanding. And it is our guess that all this usually takes place in the parlor of the old home, which most naturally and humanly calls out the family confidence in each other, and nobody thinks of or would permit a writing. The arrangements being complete, the one stays on watching, the brothers and sisters pack up and leave, while John takes the milk bucket and goes out to the cow shed.

The trouble starts long afterwards. So, it seems to the writer, that if oral agreements, otherwise unobjectionable, are to be upheld at all, it cannot in right and equity be said they are good as to all except the homestead. And this court now so holds and the holding to the contrary, in *Teske v. Dittberner*, 63 Neb. 607, and 70 Neb. 544, is hereby overruled.

It follows that the decree of the district court is reversed and the cause remanded, with directions to enter findings and a decree, in accordance herewith, of specific performance in favor of the plaintiff, Frank Denesia, as prayed in his petition.

REVERSED.