GUSTAVIA LENNOX, APPELLANT, V. JENNIE ANDERSON ET AL., APPELLEES.

1 N. W. (2d) 912

FILED JANUARY 9, 1942. No. 31221.

*Charles E. Foster* and *Harry C. DeLamatre,* for appellant.

*Walter R. Johnson, Attorney General,* and *Rush C. Clarke,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

Plaintiff seeks to establish fee simple title to real estate and certain personal property, based on an oral agreement that, in the event plaintiff would make her home with the owners thereof and care for them during their lifetime, she would receive all of such property. Plaintiff alleges performance of the oral agreement and prays for specific performance. From an adverse decision, plaintiff appeals, predicating error in that the judgment of the court is contrary to the law and the evidence.

The following facts are established without dispute by the pleadings: Hilma and Charles J. Sanders were husband and wife, the former a sister of the plaintiff. Hilma Sanders died June 26, 1937, leaving a last will and testament which was duly probated. Her husband, Charles J. Sanders, died February 20, 1940. Plaintiff's petition alleges that, by joint efforts and contributions of Hilma and Charles J. Sanders, they accumulated certain real estate which they

occupied as a homestead, fee simple title thereto being in Hilma during her lifetime, and she, by her will, devised such interest to her husband. Defendants' answer denies generally the allegations of plaintiff's petition and denies such devise of real estate; alleges that Charles J. Sanders had expended considerable sums of money in maintaining the premises and had treated the same as his real estate; that the plaintiff had full knowledge of Hilma's will. The object of the defendants in denying ownership of the real estate in Hilma Sanders was to compel the plaintiff to prove first such ownership. The answer pleads the contract is not in writing and, therefore, violative of the statute of frauds. An analysis of the pleadings warrants us in drawing the conclusion that ownership of the real estate was in Hilma Sanders during her lifetime and thereafter in Charles J. Sanders. He, by will, left all his property, real and personal, to his sister, Jennie Anderson, one of the defendants.

The oral contract, constituting the basis of this action, is as follows: Upon plaintiff's arrival in Omaha, Hilma and Charles J. Sanders orally agreed with her that, if she would make her home with them and care for Hilma during her lifetime and for Charles J. Sanders, the home occupied by them, together with its contents, would become the property of the plaintiff. In accordance with such agreement, plaintiff assumed the duties as provided therein by living in the home with the Sanders, taking care of them, performing the duties of a practical nurse, doing the housework, cooking the meals, and performing all things necessary to maintain the household. We hereafter set forth the substance of the competent testimony to establish the oral agreement. Due to the confusing nature of the testimony of the witness Mary E. Hinterlong, and in that the greater portion thereof constitutes conclusions and opinions of this witness, we purposely refrain from stating her testimony. The testimony of the following witnesses is pertinent.

Mrs. Robert Carlton, a close neighbor of the Sanders,

recalled that plaintiff came to the Sanders home in the fall or winter of 1936. One evening, three or four days prior to Hilma's death and during plaintiff's absence, this witness took care of Hilma, "fixed her for the night." Hilma told her she would not live much longer, "but that Gussie (plaintiff) would be taken care of, because everything they had would go to her;" that plaintiff "had given up a lot to come here and stay with them, and she felt it was the thing to do, that she should have all that was left."

Alfilda Nelson, who had known Hilma Sanders for 60 years and her husband for more than 50 years, visited their home frequently, and on several occasions, during Hilma's last illness, Hilma told this witness she wanted them to stay together and have Hans cared for; that if anything happened to them it would be plaintiff's home as long as she lived. The "Hans" referred to was one Hansen, who lived on the premises, worked about the place and kept up the yard. Three weeks after Hilma's death, this witness had a conversation with Charles J. Sanders in which she said: "I am so glad * * * you all stayed together," and Charles said: "Oh, yes," "That was Hilma's wish that we should all stay together and that Mrs. Lennox (plaintiff) should have a home here with us so long as she lived, and that Hans should be taken care of."

The witness Gertrude Kurtz, a neighbor, had known the Sanders 37 or 38 years, visited their home frequently and was there during Hilma's last illness. A month before Hilma's death she told this witness that "she wanted her (plaintiff) to have the things after, if anything happened to her," and wanted Mr. Sanders and the plaintiff "to be together as long as they lived." Ella Wright, a frequent visitor in the Sanders home, testified to a conversation she had with Hilma Sanders in the early part of 1937, wherein Hilma told this witness that the plaintiff should have all she owned, all of her property; that she "was going to fix it that she (plaintiff) got what she had."

Florence Workman, a neighbor of the Sanders, was frequently in the home, and during the last illness of Charles

J. Sanders on several occasions administered insulin to him, and at such times visited with him with reference to the plaintiff and the property. He told her that plaintiff "was very good to him, and he said that when he passed away, that he wanted her to have all the property * * * because she had worked so hard for him and stayed up nights, and had taken care of him." Other evidence appears in the record which we deem unnecessary to set out, except to say that evidence of performance of the oral agreement is sufficiently persuasive, in that it is not contradicted by the defendants.

The law is well established that a court of equity will grant specific performance of an oral contract to leave property to another, where the terms of the contract are established by evidence which is clear, convincing and satisfactory, and where it has been fully performed by one party, and its nonfulfilment would amount to a fraud upon that party. *Kofka v. Rosicky,* 41 Neb. 328, 59 N. W. 788; *Harrison v. Harrison,* 80 Neb. 103, 113 N. W. 1042; *McNea v. Moran,* 101 Neb. 476, 163 N. W. 766; *Davis v. Murphy,* 105 Neb. 839, 182 N. W. 365; *Denesia v. Denesia,* 116 Neb. 789, 219 N. W. 142; *Weber v. Crabill,* 123 Neb. 88, 242 N. W. 267; *Craig v. Seebecker,* 135 Neb. 221, 280 N. W. 913.

In *Weber v. Crabill, supra,* it was held: "Courts will compel specific performance of an oral contract to convey specified real estate in consideration of personal care to be given to the owner during the remainder of his natural life, when the terms of the contract are fair and reasonable and the evidence to establish such contract and its performance is clear, satisfactory, and convincing."

In *Overlander v. Ware,* 102 Neb. 216, 166 N. W. 611, this court held: "In an action for specific performance of an oral agreement with a deceased person to convey land, *held,* that not only must the terms of the contract be established by evidence that is clear, satisfactory and unequivocal, but the work constituting the performance required under the statute of frauds must be such as is referable solely to the contract sought to be enforced, and not

such as might reasonably be referable to some other and different contract or relation. Nothing will be considered as part performance which does not put the party into a situation which is a fraud upon him unless the agreement be fully performed. Equity interferes only to prevent fraud or unconscionable advantage."

The law is well established that each case is to be determined from the facts, circumstances and conditions, as presented therein. *Damkroeger v. James*, 95 Neb. 784, 146 N. W. 936.

We turn our attention to the question: Whether the evidence is sufficient to establish, by clear, satisfactory and convincing evidence, that the oral agreement was made and that the plaintiff fulfilled her part of the agreement so as to entitle her to specific performance thereof? We have recited the evidence of the witnesses who testified as to statements made by Hilma Sanders and Charles J. Sanders that such agreement had been made. The evidence shows that the plaintiff remained in the Sanders home from the day that she arrived, supervised the housekeeping, cooked meals and waited on and nursed both Hilma and Charles J. Sanders during their last illness, up to the time of their death.

The defendants argue that the evidence in support of the parol contract is not clear and convincing, in that there is some testimony that the plaintiff was to have a life estate in the property. We are convinced that the greater weight thereof supports the contention of plaintiff that she was to have all of the property of the Sanders for the performance of services, as pleaded in her petition.

It is further argued by defendants that on account of the plaintiff's age of more than 80 years she had received adequate compensation, in that she had been furnished a home since the fall of 1936. We see no merit to this contention. There is no evidence of infirmity on the part of plaintiff, or that she desired to come to Omaha. On the contrary, she came at the request of the Sanders because they needed her services. She left a farm home in New York state.

From an analysis of the entire record and the facts and circumstances surrounding this case, we conclude that the trial court erred in denying to plaintiff performance of the oral contract.

Plaintiff offered testimony of conversations, with reference to the oral agreement, between Charles J. Sanders and an attorney employed by him to draft and witness a will, wherein he left all of his property to the plaintiff; likewise, evidence of another witness to the will, a law partner of the scrivener of the instrument. Objection to such offered testimony was made on the ground that the communication between the attorney and client was privileged.

Section 20-1206, Comp. St. 1929, provides in part: "No practicing attorney, counselor, * * * shall be allowed in giving testimony to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

Section 20-1201, Comp. St. Supp. 1939, provides in part: "Every human being of sufficient capacity to understand the obligation of an oath, is a competent witness in all cases, civil and criminal, except as otherwise herein declared. The following persons shall be incompetent to testify: * * * Third: An attorney concerning any communication made to him by his client in that relation or his advice thereon, without the client's consent in open court or in writing produced in court."

The general rule is: "Where a testator requests the attorney who drafted the will, and with whom he has consulted in regard thereto, to sign the will as an attesting witness, and the attorney does so, his testimony with reference to the transaction and communications between him and the testator at the time are not inadmissible as privileged." Annotation, 64 A. L. R. 192. The reason is that "The testator, by his act, has in effect consented that, whenever the will shall be offered for probate, the attorney may be

called as a witness and testify to any facts within his knowledge necessary to establish the validity of the will." By his act, the testator waives the privileged communication. The foregoing rule prevails, "notwithstanding statutory provisions that an attorney cannot, without the consent of his client, be examined as to any communication made by the client to him." 64 A. L. R. 192.

It will be noted that the foregoing rule applies to a situation distinctly different from that appearing in the instant case. Here, the conversation had by the attorney and client at the time of the execution of the will and the will itself are offered as corroborating evidence in an action by the beneficiary of the will to establish an oral contract. In the instant case the will offered in evidence had been revoked by the testator. When a person employs an attorney to have a will drawn and confides in the attorney as to the disposition of his property, it is the client's desire that during his lifetime the will be kept a secret, and a confidential relation exists. The attorney is not privileged to give the will publicity in any form. This confidential communication is temporary. After the testator's death, the attorney is at liberty to disclose all that affects the execution and contents of the will. The privilege has been waived by the testator, especially so when the scrivener of the will is a witness to it.

So, in the instant case, when Charles J. Sanders consulted counsel about the making of a will, he never intended it to be published. He subsequently revoked the will and made a different disposition of the property. The effect of this act is: "While a testator waives the seal of confidence by requesting his attorney to witness his will, it seems that he may annul such waiver by revoking the will, so that the attorney will not thereafter be permitted to testify as to its execution and instructions given by the testator respecting the will." Annotation, 64 A. L. R. 194. The reason for the above rule is that the right of secrecy belongs to the client, not to the lawyer who drafted the will. Under the circumstances as here existent, the case of

*Brown v. Brown*, 77 Neb. 125, 108 N. W. 180, cited by plaintiff, is inapplicable.

The case of *Robinette v. Olsen*, 114 Neb. 728, 209 N. W. 614, is called to our attention. In that case testimony of a witness who drafted the will was discussed at length in the opinion. We have scrutinized the record and the briefs of counsel in such case and do not find a specific objection to such testimony as a privileged communication. In addition, the will referred to was destroyed, and there was no evidence of another will having been made, which revoked the will offered or testified to. The situation in the *Robinette* case is entirely different from that in the instant case, and that case is no authority for the introduction of evidence of a scrivener of a will, who signed the same as a witness, as to communications had at the time of the execution of the will, when such will had been revoked.

We conclude on this point that the court properly sustained the objection to the admissibility of such evidence for the reason that the communication was privileged.

The judgment of the district court is reversed and the cause remanded, with instructions to enter judgment for the plaintiff, giving her the fee simple title to the real estate in question and the personal property of which Charles J. Sanders died seised, after deducting all expense incurred in the probate proceedings and debts allowed against his estate.

REVERSED.

YEAGER, J., not participating.