LLOYD PETERS ET AL., APPELLEES, V. LOWELL WILKS, EXECUTOR OF THE ESTATE OF ELLSWORTH E. HILL, DECEASED, APPELLEE, IMPLEADED WITH CARL G. NUSS, APPELLANT.

39 N. W. 2d 793

Filed December 1, 1949. No. 32697.

*Atkins & Lyman,* and *True R. Ferguson,* for appellant.

*Mothersead, Wright & Simmons,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This case was brought by appellees for specific performance of an oral contract alleged to have been made with Ellsworth E. Hill, now deceased, by which he promised to give his property to appellees if they would move to his home on a farm near Minatare, Nebraska, and there care for him until his death. Appellees plead full performance by them of the contract; that deceased violated it by making bonds owned by him payable to appellant; and by bestowing upon him by will all unsold crops of the deceased. Appellant admitted some of the allegations of the petition, and denied generally the others. The decree granted appellees the relief sought by their petition and awarded the bonds and the crops to them. The appeal is from that decree.

Appellant asserts that the decision of the district court is not sustained by the evidence and is contrary to law.

Ellsworth E. Hill was in 1946 about 80 years of age. He and Lloyd Peters had some acquaintance from about 1938. They lived at the Globe Hotel in Scottsbluff from March 21 to April 30, 1946. Peters was a policeman. Jane Peters, his wife, joined him about the first week in April and lived there until May 1, 1946. She became acquainted with Hill. Before he went to the Globe Hotel he had been cared for by a nurse, Dorothy Kuns, until her death. He had no known relative. He owned a life estate in land near Minatare on which was a modern farm home. Appellees saw him each day while they lived at the hotel and they conversed frequently. Hill asked Peters to drive for him. Peters worked on the night shift and drove Hill in the afternoon a number of times—nearly every afternoon—and sometimes Mrs. Peters accompanied them. Peters accompanied Hill to his farm home on some occasions, and they had conver-

sations on these trips. The first of May 1946, appellees
and Hill moved from the Globe Hotel in Scottsbluff to
his farm home near Minatare, Nebraska, and lived there
until Mr. Hill's death on August 10, 1948. On several
occasions while they were staying at the Globe Hotel
he asked Peters to go out and live on his place and keep
house for him; that he would not have to quit the police
force, but could use Hill's car for transportation to and
from his work. While appellees and Hill resided in his
home he frequently referred to Lloyd Peters as his
"boy" and Mr. and Mrs. Peters as "the kids," and spoke
of his interest in and affection for their little girl. He
told acquaintances and friends of his satisfaction with
appellees, how they had given him good care, furnished
him what he wanted to eat, that they were fine people,
kept his house in good condition, and were considerate
of him. He also stated that the Peters were to take
him to the places where he desired to go, were to take
care of the house, do the housework, and take care of
him until he died; that he had enough to take care of
the Peters and give them a home for a long time; that
he thought they should have everything when he died;
that he had the kids come out there to take care of
him "and they were supposed to have everything that
he had after his death if they stayed with him and took
care of him until * * * his death"; that "the kids had
taken care of him and he was leaving everything to
them"; that "he was appreciative of what they had done
for him and that at his death whatever he had would
be for Peters"; and that " 'If Pete looks after me until I
die, I am going to give him everything I have got.' "

These and similar declarations and admissions were
frequently made by Hill to his neighbors and acquaint-
ances. There is no contradiction or dispute concerning
any of them.

His condition was such that the indispensable thing
he required was someone to give him the care he was
not capable of giving himself—someone to take him

places, look after his needs, bathe him, prepare the kind of food he could eat and had to have, to clothe him, launder and clean his clothing, his bedding, and his room. He was aged, without teeth, hard of hearing, helpless, and his health and strength had deteriorated to the extent that he had lost control of his bodily functions. His condition and habits made his care onerous, constant, and extremely unpleasant and exacting.

Appellees gave Hill the service, attention, and consideration that he required and should have had. His frequent statements throughout the period of their service shows this. He said "he was well satisfied with what the Peters had done for him and they had taken good care of him * * *." There is neither pleading nor evidence of any neglect, default, or nonperformance on the part of appellees.

An examination and consideration of the evidence is convincing that the oral agreement as claimed by the appellees was made; and that it was performed by them and violated by the deceased to the extent and in the respects complained of by the appellees. The character and effect of the evidence referred to may not furnish a measure for other cases, and the evidence of the making of the contract might be insufficient in a case of different facts and circumstances. Whether an oral contract to leave property to another should be enforced by specific performance after it has been performed by the beneficiary of the contract depends upon the facts and circumstances of each case. Peterson v. Bauer, 83 Neb. 405, 119 N. W. 764; Lennox v. Anderson, 140 Neb. 748, 1 N. W. 2d 912. Courts of equity may grant specific performance of an oral contract to transfer the title of personal property. Hackbarth v. Hackbarth, 146 Neb. 919, 22 N. W. 2d 184; Cox v. Johnston, 139 Neb. 223, 296 N. W. 883. Equity will grant specific performance of a parol agreement to leave property to another if it is shown by evidence convincing and satisfactory, if it has been wholly performed by one party, and its non-

performance would be a fraud on him. Craig v. See-becker, 135 Neb. 221, 280 N. W. 913; Hackbarth v. Hackbarth, *supra;* Lennox v. Anderson, *supra.* Performance of an oral contract to transfer specific property in consideration of personal care to be given to the owner during the remainder of his life may be decreed by the court when the existence and performance of it is established by clear and satisfactory evidence. Weber v. Crabill, 123 Neb. 88, 242 N. W. 267; Craig v. Seebecker, *supra;* Lennox v. Anderson, *supra;* Davis v. Murphy, 105 Neb. 839, 182 N. W. 365; Damkroeger v. James, 95 Neb. 784, 146 N. W. 936; Harrison v. Harrison, 80 Neb. 103, 113 N. W. 1042.

There is nothing to indicate the services furnished deceased by appellees were gratuitous. There is no claim or evidence that they were paid any amount by the deceased for their services or expenditures. Appellees furnished the food required for the home after they moved there until the date of the death of Mr. Hill. He furnished only the fuel and electricity for heating and cooking. The appellees were not related to the deceased, had only a limited acquaintance with him, had not been befriended by him, and were not under obligation to him in any way. They had no obligation, legal or moral, to care for him or to provide for his welfare. They were, when they moved to the Hill home, a young married couple soon to become parents. The record indicates they had neither home, accumulations, nor income except the limited earning of Peters as a policeman in a western city of the state, and later as a common laborer. During the period vital to this case Mrs. Peters became the mother of two children, cared for them and the deceased, and performed all the household duties without assistance except for those brief periods when she was disabled or prevented by circumstances beyond her control. When appellees were away from the home for very short periods at infrequent intervals, they provided reasonable care for the deceased. These facts support

the claim of an agreement with the deceased, and are evidence as to the nature thereof. The contract asserted is not unreasonable or inequitable. The only property involved in this case consists of United States "E" bonds of the face value of $8,200 and the crops owned by deceased at the time of his death, the value of which is not shown. There is nothing in the case to indicate the deceased would have wanted appellees, or that they would have been willing, to do as they did relying upon an implied agreement to pay them at some time then in the indefinite future such amount of money as a court or jury might estimate as reasonable compensation. Where the acts performed by the claimants tend to show not only that there was an agreement, but also throw some light on the nature of the agreement, the evidence cannot be said to rest wholly in parol. The parol evidence, in such a situation, is auxiliary to the proof afforded by the case itself. Harrison v. Harrison, *supra*.

Appellant claims error because the court excluded evidence offered by him of alleged statements made by the deceased not in the presence of appellees and not adverse to his interest. Offers of proof were made and refused. The proposed evidence was hearsay and self-serving. Declarations of a deceased against interest are admissible as evidence of a contract to leave property to another, but such declarations cannot be annulled or explained away by counter declarations which are self-serving and hearsay. Sampson v. Sissel, *ante* p. 521, 38 N. W. 2d 341; Cahill v. Mockett, 143 Neb. 730, 10 N. W. 2d 679; Davis v. Murphy, *supra*.

The purpose and any importance of the excluded matters were to show failure of appellees to perform their part of the contract. Appellant did not interpose non-performance as a defense. Appellees pleaded performance on their part in general terms, and appellant relied upon a denial. If defendant relies upon the nonperformance of the contract by the plaintiff, he must allege

that fact in his answer, and in pleading nonperformance, the facts which constitute the breach must be alleged. Where by statute, as in this state, plaintiff is authorized to plead general performance of all conditions precedent, defendant must, if he relies upon the fact that any of the conditions precedent have not been performed, set out specifically the condition and the breach. § 25-836, R. S. 1943; Morearty v. City of McCook, 119 Neb. 202, 228 N. W. 367; Davidson v. First American Ins. Co., 129 Neb. 184, 261 N. W. 144. The rejection of the offers made was not prejudicial to appellant.

The decree of the district court should be affirmed.

AFFIRMED.