JACOB M. VERMAAS ET AL., APPELLEES, v. W. ARTHUR FAGAN, ADMINISTRATOR OF THE ESTATE OF HARRY E. FAGAN, DECEASED, ET AL., APPELLANTS.

93 N. W. 2d 381

Filed December 12, 1958. No. 34460.

*Healey, Davies, Wilson & Barlow,* for appellants.

*Marti, O'Gara, Dalton & Sheldon* and *John E. Sullivan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

CARTER, J.

The plaintiffs commenced this suit in the district court for Lancaster County to obtain a decree requiring the specific performance of an oral agreement which they allege was entered into between them and Harry E. Fagan, since deceased, and to have the title to certain real and personal property described in the petition quieted in them. The defendants answered and entered a general denial. The trial court found for the plaintiffs and the defendants have appealed.

The plaintiffs are husband and wife, and for more than 18 years had resided in Cheney, Lancaster County, Nebraska. Harry E. Fagan and Agnes Fagan were husband and wife and had resided in Cheney longer than the plaintiffs. Agnes Fagan died on August 19, 1955, at the age of 80 years. Harry E. Fagan died on October 23, 1955, at the age of 87 years. The Fagans had one child, Nellie Fagan, who passed away on March 19, 1935, at the age of 24 years. Harry E. Fagan died intestate.

Many witnesses were called to testify. One or more witnesses testified to each of the facts herein recited. During their childhood Mary Vermaas, then Mary Sullivan, and Nellie Fagan were close friends. They visited each other's homes continuously. They dressed alike and had similar interests. Upon the death of Nellie Fagan, Harry and Agnes Fagan began treating Mary Vermaas more and more as a daughter. When Mary Vermaas was married she took up residence with her husband in Bennet. The Vermaas family and the Fagans continued their close relationship. In 1937 the Fagans asked Mary and Jacob Vermaas to move to Cheney to assist in caring for the Fagans. Harry Fagan told a disinterested witness if the Vermaases cared for them they would get the farm. Jacob Vermaas was

working as a road maintainer for the county, and the move was made without interference with his work. They moved within a block of the Fagans and resided there until after the death of Agnes and Harry Fagan.

The evidence shows that Mary Vermaas continuously looked after the welfare of Agnes Fagan. She furnished her with milk, canned meat, fresh bread, and other articles of food over the years. She did her washing and ironing, carrying it back and forth from her home. She scrubbed floors, cleaned house, and did many other menial duties for Agnes Fagan. When Agnes Fagan was ill Mary Vermaas looked after her constantly. She prepared and served her food, gave her medicine, and gave her daily enemas prescribed by the physician.

The evidence shows that Jacob Vermaas attended to the wants of the Fagans. He stopped in every morning before going to work. He carried in fuel. He kept the Fagan automobile in running order. He mowed the lawn, clipped the hedge, repaired the buildings, and attended their needs generally. The Vermaases are not related to the Fagans. The evidence clearly shows that the Vermaases performed services in excess of mere neighborly acts; in fact, it shows that they did more in caring for these elderly people than most close relatives would have done.

There is evidence by several disinterested persons who testified to statements made by Harry Fagan to the effect that the Vermaases had been very good to them and that the Vermaases would get his property. On one occasion Harry Fagan became very ill. He said afterwards in the presence of witnesses that he was so sick he almost had to make out his will, and that he guessed he had better do so in order that Jake would get his property. The evidence shows also that Jacob did work on the Fagan farm, fixing and building fences, boring wells, and leveling the land. He planted crops to enrich the land and as a part of a conservation program. Harry Fagan permitted Jacob to pay for a part of

this expense. He told one witness that Jacob could pay for it as it was to be his anyhow. He built a corn crib and a granary for Fagan, and paid for most of the materials himself.

After the death of Agnes Fagan a purported and unenforcible will was found among her effects which directed that Mary Vermaas be the recipient of all her property.

It is clear from all the evidence that Mary and Jacob Vermaas performed services which greatly exceeded any moral obligation they owed to the Fagans. It indicates that the services performed for these elderly people were in reliance upon an agreement that the Vermaases would be left the property after the death of the Fagans. It is amply adequate to sustain an oral agreement and the performance thereof on the part of Jacob and Mary Vermaas to take it outside of the provisions of the statute of frauds.

The law controlling the enforcement of oral contracts of this character is well established. Such agreements are ordinarily unenforcible under the statute of frauds unless made in writing. Equity will, however, grant specific performance of a parol agreement to leave property to another, if it is proved by clear, convincing, and satisfactory evidence, if it has been performed by one party, and if its nonperformance by the other would amount to a fraud upon him. An oral agreement to transfer property to another in consideration of personal care of the owner during the remainder of his life may afford a basis for a decree of specific performance when the evidence supports a finding that such an agreement existed and that it has been performed by the person seeking equitable relief. The things done which are alleged to constitute performance must be such as are referable solely to the oral agreement sought to be enforced, and not from some other relation. Egan v. Hall, 159 Neb. 537, 68 N. W. 2d 147;

Peters v. Wilks, 151 Neb. 861, 39 N. W. 2d 793; Lennox v. Anderson, 140 Neb. 748, 1 N. W. 2d 912.

There is nothing to indicate that the services rendered Harry and Agnes were gratuitous. There is no claim advanced that plaintiffs were paid any amount by the deceased for their services and expenditures. Plaintiffs were not related to the Fagans, and there is no evidence that they were obligated to them in any way. Plaintiffs had no obligation, legal or moral, to care for the Fagans or to attend their general welfare. The contract is a reasonable and fair one. Where the acts performed by the plaintiffs tend to show not only that there was an agreement, but also throw light on its nature, the evidence cannot be said to rest wholly in parol. The parol evidence in such a situation is auxiliary to the proof afforded by the circumstances of the case itself. A reading of the record convinces us that the agreement was made as alleged and that there has been complete performance on the part of the plaintiffs. The plaintiffs having fully performed their part of the agreement it would be inequitable and unjust not to require the defendants to comply with the agreement.

The defendants offered the evidence of Jack Engel, a nephew of Harry E. Fagan, to the effect that Fagan made the following statement to him 2 weeks before his death: "Jack, I don't know what in thunder to do with my property. * * * There are so many of them." Objection was duly made to the offer of this evidence. The evidence is not admissible. Declarations against interest cannot be annulled or explained away by counter declarations. Harrison v. Harrison, 80 Neb. 103, 113 N. W. 1042; Cahill v. Mockett, 143 Neb. 730, 10 N. W. 2d 679.

The judgment of the district court being in conformity with this opinion is affirmed.

AFFIRMED.

WENKE, J., participating on briefs.