ANNE GUYNAN, APPELLEE, V.
BERNARD EDWARD GUYNAN, APPELLANT, AND
LARRY AND VICKIE OSTRANDER, APPELLEES.

305 N.W.2d 882

Filed May 15, 1981. No. 43260.

Firmin Q. Feltz for appellant.

C. Kenneth Spady and J. A. Lane of McGinley, Lane, Mueller, Shanahan & McQuillan for appellee Anne Guynan.

Heard before KRIVOSHA, C.J., McCOWN, BRODKEY, and HASTINGS, JJ., and HICKMAN, District Judge.

BRODKEY, J.

Anne Guynan (Anne), plaintiff and appellee herein, brought this action of ejectment in the District Court of Keith County, Nebraska, against her son, Bernard Edward Guynan (Edward), the defendant and appellant herein, to recover certain real estate and a basement house constructed thereon, described as Lot 12, Clarkson's Subdivision to Paxton, Nebraska. Also named as defendants in this action are Larry and Vickie Ostrander, tenants of Edward at the time of trial. The trial court found generally in favor of the plaintiff and ordered each of the defendants to deliver possession of the real estate to Anne. We affirm.

The record discloses that prior to 1955 the real estate in question was owned by Bernard J. Guynan, the husband of Anne and the father of Edward. The property in question, together with adjoining real estate owned by Bernard J. Guynan, consisted of 77 acres of grassland north of Paxton, which has been used as pasturage and for dryfarming purposes. In September of 1955, Edward obtained the permission

from his father to construct a basement house on a portion of the property. Construction of the house was completed in 1956, at a cost of $9,188.51, paid for by Edward. The house measured 28 feet x 50 feet with a 7-foot ceiling, and was constructed of concrete block which was plastered on the outside and paneled on the interior walls. It appears that Edward resided in the house from 1957 to 1960, and since that time has leased the house and has received the rentals therefrom. The record indicates that during this same period all of the real estate taxes on the property have been paid by the father, Bernard J. Guynan, or his wife, Anne.

On April 16, 1970, Bernard J. Guynan died and Anne obtained title to the property in question under the provisions of her late husband's will, which gave her the election to take either a fee simple title or a life estate in this and other real estate. Anne allowed Edward to remain in possession of the premises and to continue renting it to others as he had done in the past. However, a disagreement subsequently arose between them which led Anne to demand the property, and eventually to file this ejectment action. Edward alleged in his answer and cross-petition that he is the equitable owner of the property, for the reason that his father had promised to convey the premises to him; and that in reliance upon such promise to convey, he had expended time, materials, and money in the construction of the basement home on the property.

In their brief on appeal, the defendants assign as error: (1) That the trial court erred in failing to impose a constructive trust upon the real estate in question in favor of Edward; (2) That the court erred in failing to impress a resulting trust upon said premises; (3) The court erred in failing to find that Edward had been in adverse possession of the premises for more than the statutory period, and in failing to quiet the title in Edward; (4) The court erred in requiring the defendants to surrender possession of the premises to Anne;

(5) The court erred in failing to find that Anne was estopped from claiming title and possession to the premises; and (6) The court erred in failing to find that Edward had no intention of annexing the basement house to the real estate in question.

We first consider appellant's contention that the trial court should have imposed a trust upon the property in question, particularly a constructive trust. The appellant cites as his authority for such contention our recent case of *Kuhlman v. Cargile*, 200 Neb. 150, 262 N.W.2d 454 (1978), in which case, under the facts there presented, we did impose a constructive trust upon property deeded to a woman, Molly Lind, by her daughter and son-in-law in contemplation of the proposed forthcoming marriage of Molly to Dave Kuhlman. Although the parties in that case never married, they did build a house in which they planned to live. Kuhlman paid for the costs of construction in the sum of approximately $24,000, and Molly approximately $6,000. It appears that Kuhlman was quite advanced in years and unfamiliar with business practices. He attempted to obtain a loan upon the house and discovered that the title had been placed in the name of Molly and that she would not permit him to make the loan. The marriage between the two never materialized. We imposed a constructive trust in that case upon the theory that there had been an unjust enrichment of Molly, notwithstanding there was no direct and positive evidence of fraud or misrepresentation. In this case, the appellant also urges us to impose a constructive trust on the ground of unjust enrichment. In *Kuhlman v. Cargile, supra,* we held that a constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his acquisition or retention of the property would constitute unjust enrichment. We specifically stated, however, that each case involving the existence of a constructive

trust is to be determined on the particular facts, circumstances, and conditions presented therein. We did not state that we would impose a constructive trust in every case of alleged unjust enrichment. That is a matter for the determination of the trial judge with respect to whether the facts of the particular case necessitate the imposition of a constructive trust under equitable principles.

We believe that the factual situation contained in *Marco v. Marco*, 196 Neb. 313, 242 N.W.2d 867 (1976), is more similar to the present case. In that case, two sons were in business with their father. One son built a home and another building and the other son made improvements to his home, all of which were located on real property which is owned jointly by their father and their stepmother. All buildings and improvements were purchased with personal funds belonging to the sons. The sons testified that they were told by their father that they would get the property and their own houses and building when he died. They stated that their father told them he did not deed the property to them because if they should be divorced their wives were likely to get the property. In that case this court declined to impose a constructive trust upon the property and, quoting from *Paul v. McGahan*, 152 Neb. 578, 42 N.W.2d 172 (1950), stated as follows: "Constructive trusts arise from actual or constructive fraud or imposition, committed by one party on another. Thus if one person procures the legal title to property from another by fraud or misrepresentation, or by an abuse of some influential or confidential relation which he holds toward the owner of the legal title, obtains such title from him upon more advantageous terms than he could otherwise have obtained it, the law constructs a trust in favor of the party upon whom the fraud or imposition has been practiced." *Id.* at 316, 242 N.W.2d at 871. Although the trial court in the instant case did not specifically pass upon the issue of imposing a constructive trust,

by virtue of the fact that it found generally in favor of the plaintiff and against the defendants, it must have inferentially decided that issue against the defendants. We conclude from a review of the evidence in the case that the trial court was correct in not imposing a constructive trust upon the property in question under the facts existing in the record which has been reviewed by us. This is particularly true considering the fact that there is not one scintilla of evidence in the record to substantiate Edward's claim that Bernard J. Guynan, his father, had promised to give him the real estate during his lifetime. We conclude that Edward's first assignment of error is without merit.

We reach the same conclusion with regard to Edward's second assignment of error in which he claims a resulting trust in the property. We believe there is even less evidence to justify a resulting trust than to establish a constructive trust. A resulting trust is a trust created by act or construction of law; in its more restricted sense, and contradistinguished from a constructive trust, it is one raised by implication of law and presumed to have been contemplated by the parties, their intention as to which is to be found in the nature of their transactions but not expressed in the instrument of conveyance. It is generally held that the foundation of resulting trusts lies in the ownership and payment of purchase money by one when title is taken in the name of another. *Norton v. Brink*, 75 Neb. 575, 110 N.W. 669 (1906); *Cowles v. Cowles*, 89 Neb. 327, 131 N.W. 738 (1911). The payment of consideration is the key issue. There is clearly no resulting trust arising from the facts of this case, and Edward's second assignment of error is without merit.

We now address appellant's claim to the premises in question based upon adverse possession. We note at the outset that this issue was not raised or addressed before the trial court, but rather is raised for

the first time on appeal. The rule is well settled that questions not presented or passed upon by the trial court will not be considered by this court on appeal. *Powers v. Chizek*, 204 Neb. 759, 285 N.W.2d 501 (1979); *State Fire Marshal v. Schaneman*, 203 Neb. 413, 279 N.W.2d 101 (1979); *Von Seggern v. Freeland*, 200 Neb. 570, 264 N.W. 2d 436 (1978). This court will not decide an issue raised for the first time on appeal. *Edquist v. Commercial Sav. & Loan Assn.*, 191 Neb. 618, 217 N.W.2d 82 (1974). However, even if the issue were before us in this appeal, we think it is clear that it is without merit. Without discussing in detail the required elements to establish adverse possession, we need only state that it is clear from the record in this case that the possession of Edward of the premises in question is, at the most, permissive in character, and not adverse either to his father or mother. There is no evidence that his original permissive use ever changed to a hostile use sufficient to support a claim of adverse possession. The law is well established that possession by permission of the owner can never ripen into title by adverse possession unless the change of such possession has been brought home to the adverse party. *McDermott v. Boman*, 165 Neb. 429, 86 N.W.2d 62 (1957). Even after his mother received title to the property in question under the will of Bernard J. Guynan, Edward's possession remained permissive and, so far as the record discloses, was not adverse to his mother until he refused his mother's demand for possession approximately 2 years prior to trial. The requisite 10-year period for adverse possession had not expired at the time the action was commenced.

We are convinced from a review of the record that notwithstanding the claims of the appellant that his father had promised and agreed to convey the property to him, there is nothing in the record to substantiate his claim. The evidence that appears in this regard is Edward's testimony on direct examination, as follows: "Q. During your father's lifetime did

you think that he would convey it to you? A. Yes. He told me he would. MR. LANE: Objected to and ask that it be stricken, Your Honor. THE COURT: The objection is sustained, and the answer is stricken." There is nothing further in the record whatsoever which would substantiate Edward's claim that his father promised to convey the property to him, unless it be the fact that Edward did build the house upon the property with his father's apparent permission. In his cross-petition Edward prays, in addition to asking the court to impose a constructive trust upon the property, that the court order the plaintiff to convey the said premises to him "and for such other, further and different relief as to the court may seem just and equitable." It therefore would appear that Edward is claiming the property in question under an alleged oral contract with his father. In this connection, we have held that when one claims an estate of a deceased person under an alleged oral contract, the evidence of such agreement must be clear, satisfactory, and unequivocal. *Eagan v. Hall*, 159 Neb. 537, 68 N.W.2d 147 (1955); *Wyrick v. Wyrick*, 162 Neb. 105, 75 N.W.2d 376 (1956); *Vermaas v. Fagan*, 167 Neb. 465, 93 N.W.2d 381 (1958); *Kimmel v. Roberts*, 179 Neb. 8, 136 N.W.2d 208 (1965). We have also held that one seeking specific performance of an oral contract to leave property to another has the burden of not only proving the contract but also that he has performed the obligations imposed upon him thereby. *Sopcich v. Tangeman*, 153 Neb. 506, 45 N.W.2d 478 (1951); *Drew v. Hawley*, 164 Neb. 141, 82 N.W.2d 4 (1957).

In connection with oral contracts to convey real estate, we must also consider the requirements of our statute of frauds relative to conveyances of real estate. Neb. Rev. Stat. § 36-103 (Reissue 1978) provides: "No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner

relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same." It is clear that in this case there was no writing of any nature subscribed by any of the parties. Neb. Rev. Stat. § 36-104 (Reissue 1978) also provides: "Section 36-103 shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law." As will be noted above, we have disposed of the contention that a trust was created in this property, and also that no challenge was made with reference to the effect of the testator's will under which Anne elected to take a fee simple interest in the property in question. Finally, we note that Neb. Rev. Stat. § 36-106 (Reissue 1978) provides: "Nothing contained in sections 36-101 to 36-106 shall be construed to abridge the powers of a court of equity to compel the specific performance of agreements in cases of part performance." However, we have also held that before specific performance of an oral contract to convey real estate will be decreed, the acts claimed to be in part performance themselves must unequivocally indicate the existence of the contract. *Crnkovich v. Crnkovich*, 144 Neb. 904, 15 N.W.2d 66 (1944).

Our review of the record convinces us that there was no oral contract between Edward and his father that Edward's father would leave him the property, nor, as previously indicated, was there any evidence of a promise by the father to do so.

The record shows that Edward received the permission of his father to build the basement house on the property in 1955, and at no time during his father's life did Edward make a claim to the property in question. In fact, the appellant testified at trial

that he was aware of the fact that a home which is attached to real estate normally becomes part of the freehold. Upon the death of his father in 1970, Edward was named special administrator of his father's estate. The record shows that at no time during the probate proceedings did Edward ever make claim to the property in question. In fact, he testified that he was the special administrator who helped compile the inventory of assets from which his mother, Anne, made her election as to the property under the provisions of said will. No claim to the property in question was made at that time, nor did Edward challenge his mother's right to elect said property under the terms of the will. In light of his failure to assert his claim to the premises at the time of probate, it is difficult to conceive how Edward can now claim that the property belongs to him under an alleged oral agreement with his father.

In light of the record before us, we conclude that Edward has not met his burden of establishing an oral agreement to devise the property in question, and, therefore, he is not entitled to specific performance of such alleged contract, nor is he entitled to have a trust imposed thereon.

For the reasons stated, the judgment of the trial court ordering the defendants to deliver possession of the real estate to plaintiff must be, and hereby is, affirmed.

AFFIRMED.