MARVIN E. HULSE, PERSONAL REPRESENTATIVE OF THE ESTATE
OF CHARLES D. HULSE, DECEASED, APPELLANT, V. STERLING L.
SCHELKOPF ET AL., APPELLEES.
371 N.W.2d 673

Filed August 2, 1985.   No. 84-563.

Kenneth R. Lang of Angle, Murphy, Lang & Valentino, P.C., for appellant.

Daniel E. Bryan of Heinisch & Bryan Law Office, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

618

CAPORALE, J.

The capital stock of appellee H & S Lumber Co., Inc., a Nebraska corporation, is owned by the estate of Charles D. Hulse, deceased, and appellees Sterling L. Schelkopf and Kenneth C. Lorenzen. Schelkopf and Lorenzen are also the owners and beneficiaries of a $200,000 decreasing term policy of insurance issued on decedent's life by Philadelphia Life Insurance Company. Appellant, Marvin E. Hulse, decedent's brother and personal representative of the estate, sued Schelkopf, Lorenzen, the corporation, and the insurer to recover the proceeds of that policy under the theories that either there exists an oral buy-and-sell agreement among the three stockholders which is to be specifically enforced or that a constructive trust is to be imposed upon the proceeds because of a breach of a confidential relationship. Schelkopf and Lorenzen also sued the insurer to recover the proceeds. The cases were consolidated and the insurer paid the proceeds into an escrow account. The insurer was thereupon discharged from further liability and dismissed from the actions. Following trial, the court below dismissed the personal representative's suit and determined that Schelkopf and Lorenzen were the rightful owners of the policy proceeds. The personal representative discusses in his brief on appeal to this court four assignments of error, namely, that the trial court erred in (1) finding that the evidence fell short of establishing the existence of a buy-and-sell agreement; (2) finding that the evidence fell short of establishing grounds for the imposition of a constructive trust; (3) refusing to permit a certain witness to testify; and (4) entering a protective order with respect to the deposition of an attorney. We affirm.

As an action in equity, we review this case de novo on the record, but consider that the trial court saw and heard the witnesses and accepted one version of the facts rather than another. *Reilly v. First Nat. Bank & Trust Co., ante* p. 443, 370 N.W.2d 163 (1985).

Reviewed in accordance with that standard, we find the relevant facts to be that Schelkopf, Lorenzen, and Allen Sippel were partners in the practice of veterinary medicine. In 1978 those three and decedent organized H & S for the purpose of

acquiring an existing lumberyard business. Decedent became owner of half of the capital stock of the corporation, and each of the others became an owner of one-sixth of the stock.

Decedent borrowed the $78,000 he needed to buy his stock, and Schelkopf cosigned on decedent's loan. Schelkopf also borrowed $78,000, and his partners guaranteed his note. Later, Sippel withdrew from the veterinary practice and sold his stock, in equal shares, to Schelkopf and Lorenzen.

In 1980 Schelkopf contacted Gary Gammel, an insurance agent with whom he had previously dealt, and asked about purchasing insurance on the lives of the three stockholders of H & S. Schelkopf and Lorenzen then purchased decreasing term life insurance policies issued by Philadelphia Life Insurance Company on each of their lives, as well as on decedent's life. As a consequence, Lorenzen became the owner and beneficiary of a $100,000 policy insuring Schelkopf's life, and Schelkopf became the owner and beneficiary of a $100,000 policy on Lorenzen's life. In addition, Schelkopf and Lorenzen became the joint owners and beneficiaries of the subject $200,000 policy on decedent's life. H & S also purchased and paid the premiums on a $50,000 double indemnity policy on decedent's life on which decedent had named his brother as beneficiary.

Several months after the policies were issued, decedent telephoned Gammel, wanting to know if he should own insurance on the lives of Schelkopf and Lorenzen. Gammel informed decedent that he would need an insurable interest in the lives of Schelkopf and Lorenzen in order to buy policies on their lives, and mentioned a buy-and-sell agreement as a possible means of creating such an interest. Gammel then talked with Schelkopf about such an agreement, but Schelkopf indicated that he was not interested. Decedent did not follow up on the idea, and Gammel then came to understand from talking to decedent, Schelkopf, and Lorenzen that the purpose of the policies he had sold to Schelkopf and Lorenzen was to "protect each other for the amount of capital that had a risk." Because that risk diminished as payments were made on the debts, the policies decreased in value as time went on.

The 1980 and 1981 premiums for all three policies were paid by checks drawn on Lorenzen and Schelkopf's veterinary clinic

account. In October 1982, after Schelkopf had paid the premiums for the three policies, his wife, Beverly, who worked as Schelkopf's secretary in the veterinary practice and whose duty it was to see that the premiums were paid, requested that Lorenzen reimburse Schelkopf for half of the premiums. Lorenzen suggested that she ask decedent to pay a portion of the premiums' cost in return for the bank loan guarantees. Decedent then reimbursed Schelkopf the total amount of the 1982 premiums on all three policies and wanted to know where the policies were. On October 16, 1982, she sent a memorandum to decedent, noting that she had enclosed the 1981 and 1982 insurance premium notices and stating that "Gary Gammel has the policies in his possession waiting for Sterling [Schelkopf] to make out your buy-sell agreement."

Decedent died on August 13, 1983, as the result of an automobile accident. Following decedent's death, the personal representative requested that Schelkopf and Lorenzen transfer the proceeds of the subject policy to the estate in exchange for decedent's stock in H & S. Schelkopf and Lorenzen refused, and this litigation resulted.

The personal representative alleges that Schelkopf and Lorenzen orally agreed to purchase decedent's shares of H & S stock at the time of his death and that the purchase was to be funded by the proceeds, approximately $181,000, of the $200,000 decreasing term life insurance policy. The personal representative further alleges that the agreement provided that in the event of the death of any stockholder, that stockholder's individual stock value was to be equal to the amount of the proceeds of the insurance as represented by the various policies.

The fact of the matter, however, is that there simply is no evidence that such an agreement ever existed. Schelkopf and Lorenzen deny the existence of such an agreement, Gammel testified he knew of no such agreement, and decedent's former wife testified she knew of no such agreement. A girl friend of the decedent testified she asked him why he was paying premiums on policies that gave him nothing. He replied it was to protect Schelkopf and he did not mind, as H & S was paying the premium on another policy on his life.

Nonetheless, the personal representative argues the trial

court erred in sustaining the motion to dismiss his first alternative theory of recovery at the close of his evidence because an inference can be drawn from Mrs. Schelkopf's memorandum to decedent that there was to be a buy-and-sell agreement.

He correctly argues that when a defendant in an equity action moves for a dismissal at the close of the plaintiff's evidence, he thereby admits to be true plaintiff's evidence and every inference favorable to the plaintiff which may fairly and reasonably be drawn therefrom. Where the plaintiff has made a prima facie case, the motion to dismiss is to be overruled. *Marco v. Marco,* 196 Neb. 313, 242 N.W.2d 867 (1976).

The difficulty from the personal representative's point of view, however, is that the evidence does not permit the inference he seeks to draw.

Schelkopf testified he did not know about the memorandum. Mrs. Schelkopf testified that she sent the memorandum to decedent in response to decedent's question about the location of the policies. She stated that while she was under the impression that Gammel was holding the policies in his possession until he could talk with all the stockholders about a buy-and-sell agreement, she did not know of the existence of any such agreement even though she took care of her husband's records. Further, the evidence is that decedent paid the premiums on October 14, 1982, 2 days before the memorandum was written. Consequently, he could not have paid the premiums in reliance of the statements in the memorandum.

There is no merit to the personal representative's first assignment of error.

He urges, however, that even if his proof failed to establish the existence of a buy-and-sell agreement, there did exist proof of grounds to impose a constructive trust in favor of decedent's estate upon the policy proceeds.

The personal representative cites *Paul v. McGahan,* 152 Neb. 578, 42 N.W.2d 172 (1950), arguing, apparently, that Schelkopf and Lorenzen perpetrated a fraud upon the decedent in obtaining the insurance policy on his life and in obtaining reimbursement from decedent for the premiums on three policies for 1982. In *Paul* we stated at 580, 42 N.W.2d at 174:

Constructive trusts arise from actual or constructive fraud or imposition, committed by one party on another. Thus if one person procures the legal title to property from another by fraud or misrepresentation, or by an abuse of some influential or confidential relation which he holds toward the owner of the legal title, obtains such title from him upon more advantageous terms than he could otherwise have obtained it, the law constructs a trust in favor of the party upon whom the fraud or imposition has been practiced.

See, also, *Ford v. Jordan, ante* p. 492, 370 N.W.2d 714 (1985); *Guynan v. Guynan,* 208 Neb. 775, 305 N.W.2d 882 (1981).

The personal representative again points to the memorandum from Mrs. Schelkopf and asserts that it is evidence decedent was led to believe that some type of relationship beneficial to him existed in connection with the insurance policies.

Such a position fails for the same reason it failed in the personal representative's first alternative theory of recovery. There is simply no evidence to indicate that Schelkopf and Lorenzen in any way misrepresented the reason they were buying insurance on decedent's life.

The personal representative also apparently contends that a constructive trust should be imposed on the policy proceeds because Schelkopf abused a confidential relationship with decedent. Although the personal representative asserts in his brief at 11 that the record "is replete with examples of Sterling Schelkopf's 'king pin' status in the operation of H & S Lumber Company," we are at a loss to ascertain what evidence he is talking about. It was decedent who became the majority shareholder, and it was he who became president of the corporation.

The evidence is that although Schelkopf and decedent discussed the business affairs of the corporation, Schelkopf was not familiar with the operation of H & S and was even uncertain about the office he held in the corporation.

Lorenzen had not taken an active part in the management of H & S and did not know whether he was an officer or director of

the corporation.

There is nothing else in the record concerning who ran H & S, who made the day-to-day business decisions, or decedent's role in relation to Schelkopf and the corporation.

As said in *Ford v. Jordan, supra*, the grounds for imposing a constructive trust must be proved by clear, satisfactory, and convincing evidence.

There being no evidence at all to show the existence of circumstances such that Schelkopf and Lorenzen cannot, in good conscience, retain a beneficial interest in the policy proceeds, *Ford v. Jordan, supra*, the trial court correctly dismissed, at the close of his evidence, the personal representative's second alternative theory of recovery.

He argues, however, that if the evidence fails to support either of his theories of recovery, it is because of the trial court's erroneous evidentiary and discovery rulings.

In this connection the personal representative first argues in his third assignment that the trial court erred in refusing to permit Hardy Liggett to testify at trial. Liggett, a life insurance agent, was called by the personal representative to testify as an expert witness. However, an objection to his testimony was made as soon as he stated his name and occupation, on the basis that he had not been disclosed as a witness as apparently required by a pretrial interrogatory.

We do not reach the question of whether the trial court abused its discretion in sustaining the objection, *Nixon v. Harkins, ante* p. 286, 369 N.W.2d 625 (1985), for there was no offer of proof as to what Liggett was expected to say, and there is nothing in the questions asked of him from which we can determine what that might have been.

Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1979) provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and: . . . In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

We have said that where, on objection, a ruling excluding evidence is made, an offer of proof is generally a prerequisite to

our review on appeal unless it is apparent from the context within which the question was asked that the answer would have been material and competent. *State v. Schroder*, 218 Neb. 860, 359 N.W.2d 799 (1984).

There is therefore no merit to the personal representative's third assignment of error.

He further complains about the trial court's entry of a protective order relating to the deposition of Frank C. Heinisch, an attorney who was a partner of the law firm which represented Schelkopf, Lorenzen, and H & S at trial. These parties made a motion for the protective order pursuant to this court's Rules 30(d) and 26(c), Nebraska Discovery Rules (rev. 1983), so as to protect their attorneys from oppression or undue burden and expense. In an affidavit filed in connection with that motion, Heinisch swore that his law partnership represented Schelkopf and Lorenzen regarding their business dealings with decedent but that the partnership did not represent H & S as its general corporate counsel. The protective order provided that the personal representative's discovery from Heinisch was limited to whether the H & S corporate records were altered or corrected while in his possession.

There is no showing as to the areas of discovery the personal representative intended to pursue through Heinisch. While the personal representative states in his brief that the effect of the protective order was to prevent any meaningful inquiry into corporate transactions, as provided by Rule 30, there is no evidence in the record to either support or refute this contention. Again, in the absence of such a showing, we cannot say the trial court abused its discretion. Evidence which does not appear in the record cannot be considered by this court on appeal. *Mace v. Mace*, 215 Neb. 640, 341 N.W.2d 307 (1983).

The personal representative's fourth assignment of error must also fail.

There being no merit to the assignments of error discussed by the personal representative's brief, we affirm the judgment of the trial court.

AFFIRMED.